OPINION OF THE COURT
Richard Lee Price, J.
Motions under Calendar Nos. 42, 43, 44 arid 45 of December 30, 1981 are consolidated for disposition.
Petitioners’ application for a preliminary injunction and for summary judgment is denied. Respondents’ cross motion seeking a dismissal of both the complaint and the petition is granted. The motion seeking consolidation of both the action and the CPLR article 78 proceeding is denied as moot in view of the dismissal of both the action and the proceeding.
The cross motion by respondents, Edward Regan, Comptroller of the State of New York, and the New York State *107 Employees Retirement System to dismiss as against them on venue grounds is also denied as moot.
This is, in essence, an article 78 proceeding and will be treated as such. An action seeking the same relief was brought due to petitioners’ belief that they could not obtain injunctive relief within an article 78 proceeding. Both the action and the proceeding seek the same relief and shall be treated in the same manner. Petitioners, at the eleventh hour, seek to stop demolition of the buildings on the west side of Broadway between 45th and 46th Streets, which comprise the site of the new hotel-theatre project known as the Portman Hotel.
The action and proceeding were initially brought in this court and then removed to the United States District Court, and heard together with a related Federal lawsuit seeking essentially the same relief. That court (Kevin Thomas Duffy, J.), after a hearing, denied injunctive relief. The Court of Appeals later determined that a preliminary injunction should have issued until a certain Federal issue was disposed of by Judge Duffy. Therefore, at present there is a stay of demolition, at least until the District Court determines the matter still before it. The District Court had previously remanded the remaining State claims to the State Supreme Court.
The thrust of petitioners’ argument is that the administrative procedures utilized by respondents were incomplete or improperly completed because alternatives to the plan which could have saved the Helen Hayes and Morosco Theatres were not sufficiently considered.
Certainly, the aim of saving two historically renowned theatres is a laudatory one. However, that would have to be accomplished at the cost of the possible loss to New York City and its residents of a long-awaited project designed, in part, to begin to turn around one of the most blighted, tawdry and depressed areas of Manhattan. If further decline is permitted to occur, it is a real possibility that the district itself will be the ultimate loser. A once vital and important area which made New York City the entertainment capital of the world could be left to the purveyors of pornography and prostitution, and to the massage parlors *108 and sex shows that now mar the streets and avenues of Times Square. If that were to happen, only the most hardy residents and the most unwary tourists would venture out for an evening of theatre. Such a circumstance would be to the ultimate good of no one.
The hotel will, itself, contain a 1,500-seat theatre, and will provide amenities to theatre goers and restaurant users that will be beneficial to both residents and tourists.
If the respondents were to be preliminarily enjoined from beginning demolition and construction, the entire plan may well be abandoned. Financing and construction arrangements are complete after the many years needed to obtain the various environmental and governmental approvals. Certainly, at this point, a balancing of the equities lies in favor of permitting respondents to go forward (Chrysler Corp. v Feders Corp., 63 AD2d 567).
Petitioners object to the issuance of an environmental impact study and its approval by the city authorities without alleged proper consideration of a plan by an architect of their choosing, named Lee H. Pomeroy, who now presents a plan that would permit the construction of the hotel over both the Helen Hayes and Morosco Theatres. This plan was presented only after the environmental administrative procedures had been concluded. Such a submission is untimely. All administrative procedures must come to an end at some point in time, or else no project would ever be built. The Pomeroy plan could have been submitted earlier, when it would have been given consideration before final approval was obtained. In any event, a buildover alternative was considered and rejected. That plan was found to be not feasible even though it involved building over one theatre and not two as envisioned by petitioners. Moreover, it is not necessary that every possible alternative be thoroughly explored. The only requirement is that information permitting a reasoned choice be considered (Natural Resources Defense Council v Morton, 458 F2d 827). That was done in this case.
The conclusory and unsubstantiated assertion that alternative designs were not considered is insufficient to set *109 aside the findings of the properly constituted administrative bodies.